DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} This case involves the legal custody of a little girl who was removed from her mother's care due to concerns arising from allegations of drug use and domestic violence. Summit County Children Services placed A.F. with non-relative family friends. A.F. has remained in the home of the non-relative caregivers since late March 2005. A.F.'s parents made little progress on the case plan. The agency moved for legal custody for the caregivers and the maternal grandmother also moved for legal custody. A magistrate determined that it was in A.F.'s best interest to be placed in the legal custody of her grandmother. The agency objected to the magistrate's decision. The trial court overruled the agency's objection and granted the motion for legal custody to A.F.'s maternal grandmother, who also has custody of A.F.'s two older brothers. Summit County Children Services has appealed from that judgment. The central issue on appeal is whether it is in A.F.'s best interest to be placed in the legal custody of her *Page 2 
maternal grandmother rather than her caregivers. Upon consideration, this Court concludes that the trial court properly found that legal custody to the maternal grandmother was in the child's best interest.
 BACKGROUND {¶ 2} Authorities removed A.F. from her mother's care in early March 2005, when she was just six weeks old. She was adjudicated abused and dependent and placed with non-relative caregivers chosen via the recommendation of A.F.'s mother and maternal grandmother. The caregivers, Robyn and Marcus M., have cared for A.F. since March 29, 2005. The evidence indicated that Robyn and Marcus have provided love and care for A.F. and that she is well bonded with them.
 {¶ 3} During the course of this case, A.F.'s maternal grandmother, Gay M., has visited A.F. frequently and has encouraged various family members to visit with A.F. as well. Gay has consistently taken A.F.'s two older brothers along to visit with A.F. The evidence indicated that A.F. is well bonded with her grandmother and with her older brothers as well.
 {¶ 4} A.F.'s mother made little progress on her case plan. After first moving for legal custody in December 2005, she withdrew her motion and supported Gay's efforts to obtain legal custody of A.F. Paternity testing revealed that Fredrick P. was A.F.'s father. This was not the man who had been accused of domestic violence at the origin of the case. Fredrick did not participate in the case plan or seek custody.
 {¶ 5} A magistrate held a lengthy dispositional hearing and considered the maternal grandmother's motion for legal custody and the motion of Summit County Children Services requesting legal custody for the caregivers. The magistrate's decision favored the grandmother. Summit County Children Services objected. The trial court reviewed the objection and *Page 3 
supplemental brief in support of the objection, the grandmother's response motion and brief, the hearing transcript, and applicable law. The court determined that both homes are appropriate and both the non-relative caregivers and the grandmother are able to provide appropriate care for A.F. The court found that A.F. "is very bonded to her brothers and her grandmother as well as to the [caregivers]." The trial court overruled the agency's objection because it determined that "the evidence before the Court supports a finding that it is in [A.F.]'s best interest to be placed in the legal custody of her grandmother, [Gay M.]." This Court affirms because there was ample evidence that legal custody for her grandmother was in A.F.'s best interest.
 BEST INTEREST OF THE CHILD {¶ 6} Summit County Children Services' sole assignment of error is that the trial court incorrectly awarded legal custody to the maternal grandmother because the award was not in A.F.'s best interest. The agency has argued that the trial court failed to properly consider two of the four best interest factors found in Section 2151.41.4(D) of the Ohio Revised Code. Specifically, the agency has argued that the trial court "completely ignored" the recommendation of the guardian ad litem and "did not give appropriate weight" to the fact that A.F. had been with the non-relative caregivers since she was nine weeks old.
 {¶ 7} Legal custody decisions must be based on the best interest of the child. In re T.A., 9th Dist. No. 22954, 2006-Ohio-4468, at ¶ 16 (quoting In re N.P., 9th Dist. No. 21707, 2004-Ohio-110, at ¶ 23). The Ohio Revised Code does not provide a test or set of criteria tailored to the disposition of legal custody motions. It does, however, provide a test for disposition of permanent custody motions. This Court has pointed out that a grant of legal custody to a relative "is a less drastic disposition" than permanent custody because it "leaves intact `residual parental rights, privileges, and responsibilities.'"Id. (quoting In re Shepherd, 4th Dist. No. 00CA12, *Page 4 2001 WL 802209 at *7 (Mar. 26, 2001). Despite the difference in the two dispositions, this Court has held that the statutory best interest test designed for the permanent custody situation may provide some "guidance" for trial courts making legal custody decisions. Id. at ¶ 17. The permanent custody test includes a consideration of various factors including: (1) the child's interaction with her parents, siblings, relatives, and foster caregivers, (2) the child's wishes, which may be expressed by the guardian ad litem, (3) the child's custodial history, and (4) the need for a legally secure permanent placement. R.C. 2151.41.4(D).
 {¶ 8} Children Services presented evidence supporting its contention that A.F. is well bonded with her caregivers, having been in their home since she was nine weeks old. A.F.'s guardian ad litem did not testify at the hearing, but did submit two separate reports as exhibits. In the reports, she recommended that A.F. remain with the caregivers, due primarily to the length of time A.F. has been in their home and the bond she has with them. She described that bond as "the strongest and most meaningful attachment" in A.F.'s life. She also indicated that the caregivers had consistently provided a loving, safe, and appropriate home for A.F.
 {¶ 9} A.F.'s maternal grandmother, Gay M., presented evidence that she has provided A.F.'s two older brothers with a safe, stable, and loving environment since obtaining legal custody of them. Carla M., A.F.'s mother, testified that Gay had provided a home and care for her while she was pregnant with A.F. and was present at A.F.'s birth. Carla also said that she and A.F. initially lived with Gay after they were discharged from the hospital. Carla admitted that a short time after giving birth to A.F., she began to leave her mother's house to spend time at friends' houses, sometimes taking A.F. with her for days. According to Carla and Gay, it was Gay who initially reported to Children Services that Carla's boyfriend had a history of domestic violence against Carla and may have abused the baby. *Page 5 
 {¶ 10} The evidence was largely uncontroverted that Gay has been providing a safe and appropriate home for A.F.'s older brothers and could do the same for A.F. if awarded custody. A.F.'s guardian ad litem raised concerns about the integrity of gates used to guard stairs at Gay's home, but the evidence indicated that Gay immediately remedied the situation. Gay testified that her home had been inspected and approved by various agencies, including Children Services, so that she could act as a respite caregiver for A.F. when the caregivers were unavailable. She testified that she is also certified to provide Title XX child care in her home and that United Disability Services places clients in her home as well.
 {¶ 11} When asked why the trial court should award legal custody to the caregivers rather than to the maternal grandmother, the social worker for Children Services did not raise any specific concerns about Gay's ability to provide and care for A.F. The social worker said that she had also seen Gay's mother, sister, and brother with A.F. and that the agency had no concerns about them. She testified that Gay seemed to have "a strong, supportive family."
 {¶ 12} The social worker agreed that A.F. is well bonded to one brother and her grandmother, but believed that custody should be awarded to the caregivers because: A.F. is also bonded to them and Gay had initially agreed to have A.F. placed in the caregivers' home and had not tried to bond with her until she was a year old. Gay testified and presented photographs and other witnesses in support of her contention that she had consistently visited and bonded with A.F. from the beginning, long before she moved for legal custody when A.F. was a year old. The trial court specifically noted that the evidence Children Services presented regarding the grandmother's allegedly sparse visitation with the child during the first seven months was not credible. That may have influenced the trial court to discount the guardian ad litem's assessment that the bond A.F. had with her biological family was limited to "[m]utuality of parentage and *Page 6 
taking photographs for a short term family album." The trial court held that the evidence "clearly proves . . . that throughout the pendency of this case, [Gay M.] has developed and maintained a relationship with [A.F.] by consistently visiting with her and even caring for her as a respite provider when the [caregivers] were not available."
 {¶ 13} Although the guardian ad litem's report seemed to question the depth of Gay's bond with A.F., all of the witnesses agreed that A.F. is well-bonded with her grandmother and at least one of her older brothers. Some of the witnesses questioned whether A.F. was bonded with her oldest brother, due to his autism, but Gay presented evidence that she had made an effort to foster a bond between A.F. and her oldest brother despite his medical condition. The trial court concluded that the "undisputed evidence before the Court clearly proves that [A.F.] is [] bonded to her brothers and her grandmother."
 {¶ 14} The social worker representing Children Services testified that the agency's first goal is always reunification and involving relatives in the case is "[a]bsolutely" in the best interest of the child. She also said that the agency's policy is generally to support custody for a relative if one can be identified who is fit for parenting. Although she admitted that Gay is fit to parent A.F., the agency argued that because substantial time had passed while A.F. was in the home of her caregivers, their bond outweighed the considerations in favor of reuniting A.F. with her natural family. The trial court, however, pointed out that it is not uncommon for a child to spend extended periods of time in foster care, bonding with caregivers, prior to reunification with parents or other relatives. The trial court held that, "[i]f the Court were to give more weight to this factor than the other factors in determining a child's best interest, a child placed in foster care would rarely be reunited with his or her parent or an appropriate relative." The Ohio Supreme Court has noted that Section 2151.41.4(D) does not require any one factor to be given *Page 7 
more weight than any other. In re Schaefer, 111 Ohio St. 3d 498,2006-Ohio-5513, at ¶ 56. The trial court must weigh all of the evidence and determine, on a case by case basis, which disposition is in the child's best interest.
 {¶ 15} The trial court in this case was confronted with two appropriate, committed individuals who were well bonded with A.F. and interested in obtaining legal custody. The trial court weighed the evidence, including 975 pages of hearing testimony, and agreed with the magistrate, holding that the bond A.F. had with her natural grandmother and her siblings outweighed the bond she had with her caregivers, despite the amount of time A.F. had spent in their home. Based on the evidence, the trial court properly determined that it is in A.F.'s best interest to award legal custody to her maternal grandmother rather than to her non-relative caregivers.
 CONCLUSION {¶ 16} The agency's sole assignment of error is overruled because there was ample evidence from which the trial court could conclude that it is in A.F.'s best interest to be placed in the legal custody of her grandmother. The judgment of the Summit County Common Pleas Court, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27. *Page 8 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
MOORE, P. J. BAIRD, J. CONCUR.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to § 6(C), Article IV, Constitution.) *Page 1