[Cite as *In re C.F.*, 2013-Ohio-1415.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |  |
|---|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |  |
| C.F., MINOR CHILD | : | Hon. W. Scott Gwin, P.J. |  |
|  | : | Hon. Sheila G. Farmer, J. |  |
|  | : | Hon. Patricia A. Delaney, J. |  |
|  | : |  |  |
|  | : |  |  |
|  | : |  |  |
|  | : | Case No. 2012-CA-00182 |  |
|  | : |  |  |
|  | : |  |  |
|  | : |  |  |
|  | : | O P I N I O N |  |

CHARACTER OF PROCEEDING:      Civil appeal from the Stark County Court of Common Pleas, Case No. 2011JCV00972

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      April 8, 2013

APPEARANCES:

For Plaintiff-Appellee

JAMES PHILLIPS, JR.
SCDJFS
Canton, OH 44702

For Defendant-Appellant

EMILY TRETTEL
Stark County Public Defender
200 W. Tuscarawas St. Ste. 200
Canton, OH 44702

*Gwin, P.J.*

{¶1} Mother-appellant T.H. appeals the September 12, 2012 judgment entry of the Stark County Court of Common Pleas, Juvenile Division, granting legal custody of C.F. to appellant's cousin and his wife.

*Statement of Facts and Case*

{¶2} Appellant is the mother of C.F., born February 28, 2011. Appellant was a minor when C.F. was born. Father of the child is D.F. At the time of the trial, D.F. was incarcerated in Mahoning County.

{¶3} Stark County Department of Job and Family Services ("SCDJFS") became informally involved with appellant in April of 2011 to address substance abuse and parenting issues because of appellant's delinquency adjudication on underage possession of alcohol and child endangering. Appellant had a party at her house and when the police were called, she fled and left C.F. alone in the home. As a result of the delinquency adjudication, appellant was placed on probation, ordered to attend parenting classes, and have no contact with C.F.'s father.

{¶4} On July 7, 2011, SCDJFS filed a complaint with the Stark County Court of Common Pleas, Juvenile Division, alleging that C.F. was a dependent and neglected child and petitioning the court to place C.F. into the temporary custody of appellant's cousin and his wife ("Custodians") subject to the protective supervision of SCDJFS. The complaint alleged, in part, that appellant violated the terms of her probation by having contact with C.F.'s father, was unruly at Custodians' house where she and C.F. had been placed, and had substance abuse issues. After appellant's release from the

Multi-County Juvenile Attention Center, she was placed in a foster home separate from C.F.

{¶5} At the adjudicatory hearing held on October 3, 2011, appellant and C.F.'s father stipulated to a finding of dependency. C.F. continued in the temporary custody of Custodians subject to the protective supervision of SCDJFS.

{¶6} A case plan for appellant was approved and adopted by the trial court. The case plan required appellant to complete a parenting assessment at Northeast Ohio Behavioral Health and follow all recommendations, participate in an evaluation at Quest and follow all recommendations, and to complete the Goodwill Parenting Skills Program. Individual counseling was added to the case plan due to a recommendation from the parenting evaluation. In November of 2011, Northeast Ohio Behavioral Health recommended appellant complete Goodwill Parenting, have no unsupervised contact with C.F., attend weekly individual counseling, remain in her foster home until she graduated from high school, and obtain a psychiatric consult to assist with depression and anxiety issues.

{¶7} On April 25, 2012, appellant filed motions seeking a six-month extension of temporary custody and to extend protective supervision and a motion for a set visitation. SCDJFS filed a motion to grant legal custody of C.F. to Custodians and to terminate protective supervision on April 27, 2012. A trial was held before the magistrate on July 13, 2012.

{¶8} The evidence at trial demonstrated appellant completed the Goodwill Parenting Skills Program, parenting evaluation, Quest services, and was providing negative urine screens. Appellant was doing well working towards reunification with

C.F. from July 2011 to December of 2011 while living in foster care. Rebecca Lewis, appellant's prior caseworker with SCDJFS, testified appellant did well with services and a reunification plan was in place until December of 2011. In December of 2011, appellant left foster care. Lewis testified she attempted to talk appellant out of leaving foster care and informed appellant her actions would disrupt the reunification plan with C.F. Lewis stated when appellant left foster care she returned to Alliance, dropped out of high school, discontinued counseling, discontinued medication appointments, and went to live with her father, who was not an appropriate placement for her or C.F.

{¶9} Amy Craig, appellant's current ongoing caseworker with SCDJFS, testified appellant started individual counseling but stopped going after she left foster care in December of 2011 and had only resumed counseling in July of 2012 with two appointments as of the date of trial. Lewis testified she provided appellant with a bus pass so she could attend counseling, but appellant did not do so. Appellant admitted her delay in obtaining counseling, but stated she was trying to juggle everything and did not have time to start counseling until July of 2012. Appellant testified her counselor told her she would need to continue counseling sessions at the rate of two sessions per week. Craig further testified appellant had not started her mental health medication assessment prior to the trial date and was unable to complete the in-home Goodwill service she started prior to leaving foster care because she did not have appropriate housing while living with her father.

{¶10} Craig stated when appellant left foster care she moved in with her father who appellant knew was not appropriate to be around C.F. Appellant stated she was involved in a domestic violence incident at her father's home and had previously been

involved in domestic incidents at the same home. Appellant admitted she had the option to stay in foster care, but chose to leave foster care in December of 2011.

{¶11} Appellant testified her dad offered to take her in and, though she knows her parents are not appropriate influences for her son, she loves them and is an adult who can make her own decisions. Appellant sees no harm in having a relationship with her parents. She further testified she recently allowed her father to stay at her apartment and recently had contact with her mother who uses illegal substances.

{¶12} Craig stated appellant has not taken advantage of visiting with C.F. on a regular basis. Appellant testified she was not always available when Custodians made C.F. available for visits. Appellant stated Custodians frequently denied her requests for visits. However, Custodian testified she was flexible in scheduling visits between C.F. and appellant, and that appellant saw C.F. only sporadically after she left foster care in December of 2011, going as long as twenty-three days without visiting. Custodian saw appellant standing with C.F.'s father at the bus stop after she cancelled a visit with C.F., and appellant cancelled one visit with C.F. to go to Cedar Point. Custodians offered to let appellant stay at their house on week-ends to visit with C.F., but appellant declined their offer.

{¶13} Both Craig and Appellant testified regarding an incident between appellant and C.F.'s father. Craig testified it was her understanding C.F.'s father was living with appellant and when she asked him to leave, he tore up the home and was arrested. Appellant admitted she had been advised not to have contact with C.F.'s father. Appellant first testified C.F.'s father broke into her apartment and she called the police. However, appellant then stated she opened the door for him and allowed him to remain

in her home for an hour before the neighbors called the police. Appellant jeopardized her housing because of this incident, but was ultimately permitted to retain her housing.

{¶14} Craig concluded C.F. could not be safely returned to appellant at this point in time. Also, that while a six-month extension would allow appellant to show stability in her employment and housing, she did not believe granting a six-month extension would be in the child's best interest because the individual counseling necessary for appellant to properly parent C.F. could take far longer than six months. Craig further noted her continuing concern about the regularity of visitation and appellant's judgment and decision-making, given that appellant moved in with her father and also maintained a relationship with C.F.'s father.

{¶15} Dr. Aimee Thomas completed appellant's evaluation at Northeast Ohio Behavioral Health and was stipulated by all parties to being an expert witness. Dr. Thomas testified she diagnosed appellant with major depressive disorder and generalized anxiety order. She stated her biggest concern about appellant is her ability to make good decisions and impulse control. Dr. Thomas found appellant's individual counseling to be critical and stated the individual counseling would have to be long-term and it would be a significant amount of time before C.F. could be returned to her.

{¶16} Jennifer Fire, instructor at Goodwill parenting, testified appellant completed her evaluation and interacted well with C.F. However, she also expressed concern about appellant's relationships, including those with her own father and C.F.'s father.

{¶17} Custodian testified C.F. has no medical issues and they are currently getting estimates to build onto their home so C.F. can have his own room. She does

not believe appellant would intentionally hurt C.F., but does not believe appellant can make the best decisions for his care.

{¶18} The Guardian ad Litem recommends Custodians be granted legal custody of C.F. due to her concern over appellant's decision-making ability.

{¶19} Appellant testified she currently has a job as an STNA and has secured a housing voucher, allowing her to obtain an apartment for herself with a room for C.F. Appellant enjoys visiting with C.F. and tries to implement skills taught to her in parenting class. Appellant expressed her intent to maintain her housing, job, and counseling, and to complete the Goodwill Home-Based Program since she has now secured appropriate housing.

{¶20} The magistrate's decision was filed on July 25, 2012, granting legal custody of C.F. to Custodians and denying appellant's motion for extension of temporary custody. The trial court found it was in the best interests of C.F. to grant legal custody to Custodians. The trial court did not rule on appellant's motion for set visitation. Appellant filed objections to the magistrate's decision on August 2, 2012 and supplemental objections on September 4, 2012. The trial court held an objection hearing on September 10, 2012. On September 12, 2012, the trial court overruled appellant's objections and adopted the magistrate's decision granting legal custody of C.F. to Custodians.

{¶21} Appellant now raises the following assignments of error on appeal:

{¶22} "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A FIRST SIX-MONTH EXTENSION.

{¶23} II. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION TO CHANGE LEGAL CUSTODY."

{¶24} We first note that legal custody does not divest parents of residual parental rights, privileges, and responsibilities. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188 at ¶ 17. Accordingly, appellant may petition the court in the future for a modification of custody. *Id.*

{¶25} R.C. 2151.353(A) states in pertinent part: "If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

* * *

(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. * * *.

{¶26} A trial court "must have wide latitude in considering all the evidence" and a custody decision will not be reversed absent an abuse of discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159, citing *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the finder of fact could base its judgment. *Cross Truck Equip. Co. v. The Joseph A. Jeffries Co.,* 5th Dist. No. CA5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible

evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

**{¶27}** Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis*, 77 Ohio St.3d at 419.

*Best Interest*

**{¶28}** Appellant argues the trial court abused its discretion in finding SCDJFS met its burden of proving it would be in C.F.'s best interest to change legal custody of C.F. to Custodians. We disagree.

**{¶29}** Unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is a preponderance of the evidence. *In re A.C.,* 12th Dist. No. CA2006-12-105, 2007-Ohio-3350 at ¶ 14; *In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist. 2001).

**{¶30}** In this type of dispositional hearing, the focus is on the best interest of the child. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188; *In re P.S.*, 5th Dist. No. 2012CA00007, 2012-Ohio-3431. Despite the differences between a disposition of permanent custody and legal custody, some Ohio courts have recognized that "the statutory best interest test designed for the permanent custody situation may

provide some 'guidance' for trial courts making legal custody decisions." *In re A.F.*, 9th Dist. No. 24317, 2009-Ohio-333 at ¶ 7, citing *In re T.A.*, 9th Dist. No. 22954, 2006-Ohio-4468 at ¶ 17.

{¶31} R.C. 2151.414(D) sets forth factors to be considered in making a determination regarding the best interest of the child. These factors include, but are not limited to, the following:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

(4) The child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶32} In this case, the record establishes appellant made efforts to complete the components of her case plan and SCDJFS's plan for reunification was progressing until December of 2011. However, the witnesses agreed appellant had a history of poor

decision making, particularly in her decisions to leave foster care, move in with her father who she knew was not an appropriate placement for herself or C.F., maintain a relationship with C.F.'s father, and to abandon individual counseling sessions for six months after the caseworkers and the parenting professional explained to her the importance of the sessions. In addition, Craig was also concerned about appellant's sporadic visitation schedule with C.F.

{¶33} Though appellant testified she currently has no relationship with C.F.'s father, the trial court did not find her assertions credible. As noted above, we defer to the trial court on issues of credibility. Appellant admitted moving in with her father despite knowing it was not an appropriate placement for her or C.F. but feels she is an adult and there is no harm in continuing a relationship with parents.

{¶34} The evidence also established C.F. has been placed with Custodians since April of 2011 and they have provided him a safe and stable home since he was two months old. C.F. is healthy and Custodians are planning to add a room onto their house for him. Custodians are ready and willing to care for C.F. and are willing to facilitate further visits between appellant and C.F. The Guardian ad Litem recommends legal custody of C.F. be granted to Custodians.

{¶35} Based upon the record, we find the trial court did not abuse its discretion in determining that it is in the best interest of C.F. to grant legal custody to Custodians.

*Motion for Six-Month Extension*

{¶36} Appellant asserts the trial court abused its discretion in denying her request for an extension of temporary custody. Appellant contends she was making

good progress through her case plan and could continue to progress towards reunification within the six-month time period. We disagree.

{¶37} A trial court's decision to grant or deny an extension of temporary custody is a discretionary one. See R.C. 2151.415(D)(1) and (2). Pursuant to R.C. 2151.415(D)(1), a trial court can extend temporary custody for six months only if it finds, by clear and convincing evidence, (1) that such an extension is in the best interests of the child, (2) that there has been significant progress on the case plan, and (3) that there is reasonable cause to believe that the child will be reunified with a parent or otherwise permanently placed within the period of extension. See *In re McNab*, 5th Dist. Nos. 2007 AP 11 0074, 2007 AP 11 0075, 2008-Ohio-1638.

{¶38} While appellant has completed certain aspects of the case plan, she vacillated in her compliance with the case plan, starting out in compliance with the plan and then being non-compliant when she left foster care. Craig specifically testified that while a six-month extension would allow appellant to show stability in her employment and housing, she did not believe granting a six-month extension would be in the child's best interest because the individual counseling necessary for appellant to properly parent C.F. could take far longer than six months. Craig also noted her continuing concern about the frequency of visitation and appellant's judgment and decision-making, given that appellant moved in with her father and also maintained a relationship with C.F.'s father. Dr. Thomas indicated appellant would need long-term individual counseling before a reunification with C.F. would be possible. Appellant testified her own counselor recommended counseling twice per week. Thus, the testimony reflects that because of appellant's own decisions in failing to continue her case plan and

individual counseling when she left foster care, she will not be in a position to parent C.F. in six months.

**{¶39}** We find appellant has failed to demonstrate an abuse of discretion by the trial court in denying the motion for a six-month extension. As set forth more fully above, the evidence before the trial court supports the conclusion that an extension of temporary custody was not in C.F.'s best interests, but, rather, his interests were best served by award of legal custody to Custodians. Further, the evidence also supports the trial court's conclusion that appellant cannot rectify her ability to make good decisions for the benefit of C.F. and promote reunification within the next six months.

**{¶40}** Based on the foregoing, we find that the trial court did not err in awarding legal custody of C.F. to Custodians or by denying appellant's motion for six-month extension of permanent custody.

**{¶41}** Appellant's Assignments of Error I and II are therefore overruled.

**{¶42}** The judgment of the Stark County Court of Common Pleas is affirmed.

By Gwin, P.J., and

Delaney, J., concur;

Farmer, J., dissents

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER

_____
HON. PATRICIA A. DELANEY

WSG:clw 0320

*Farmer, J., dissents*

**{¶43}**   I respectfully dissent from the majority's opinion that a reasonable amount of time was afforded to appellant.  I would find, given the specific circumstances in this case, Assignment of Error I should be granted.

**{¶44}** Appellant was seventeen years old when she gave birth to C.F. on February 28, 2011.  Appellee intervened on July 7, 2011 as a result of appellant's placement in the Multi-County Juvenile Attention Center.  Appellant recently turned eighteen years old.

**{¶45}** The testimony demonstrates because of appellant's age and life experiences and her growing up in an abusive home and receiving therapy since the 7th grade, it was a long haul for appellant to achieve her case plan.  T. at 56.  In light of appellant's young age and her recent change of heart in cooperating with the case plan (T. at 64, 108), I would find it to be an abuse of discretion to deny appellant a six month extension.

**{¶46}** Many errors have been involved in this case, most admittedly by appellant; however, I believe we should not compound the past errors with a denial of a six month extension.

_____
HON. SHEILA G. FARMER

[Cite as *In re C.F.*, 2013-Ohio-1415.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN THE MATTER OF:
C.F. MINOR CHILD

:
:
:
:
:
:
:           JUDGMENT ENTRY
:
:
:
:           CASE NO. 2012-CA-00182


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs to appellant.


_____
HON. W. SCOTT GWIN


_____
HON. SHEILA G. FARMER


_____
HON. PATRICIA A. DELANEY