[Cite as *In re Jones Children*, 2014-Ohio-906.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

JONES CHILDREN

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. Patricia A. Delaney, J.
Hon. Craig R. Baldwin, J.

Case No. 2013CA00177

O P I N I O N

CHARACTER OF PROCEEDING:    Appeal from the Stark County Court of
                            Common Pleas, Juvenile Division Case No.
                            2012JCV00400

JUDGMENT:                   Affirmed

DATE OF JUDGMENT ENTRY:     March 10, 2014

APPEARANCES:

For Appellant

KELLY S. MURRAY
116 Cleveland Avenue NW, Suite 810
Canton, Ohio 44702

For Appellee

LISA A. LOUY
Legal Counsel Stark County DJFS
300 Market Avenue North
Canton, Ohio 44702

*Hoffman, P.J.*

{¶1} Appellant Amber Jones ("Mother") appeals the August 5, 2013 Judgment Entry entered by the Stark County Court of Common Pleas, Juvenile Division, which overruled her objections to the magistrate's May 15, 2013 decision, and approved and adopted said decision as order of the court. Appellee is Stark County Job and Family Services ("SCJFS").

STATEMENT OF THE FACTS AND CASE

{¶2} Mother is the biological mother of A.J. (dob 3/17/01), M.J. (dob 4/15/04), and J.J. (dob 11/14/06). Robert Jones is the biological father of A.J. and M.J.[1] Frederick Moore is the biological father of J.J. SCJFS first became involved with the family on a non-court basis due to concerns after Mother was arrested on drug-related charges, and Jones could not be located. Family members cared for the three children. SCJFS implemented a safety plan. Mother and Jones visited the children, however, the visits typically became volatile. Further, Mother and Jones would remove the children from their voluntary placements. During SCJFS's investigation, additional concerns of domestic violence and substance abuse arose.

{¶3} On April 18, 2012, SCJFS filed a complaint alleging the three children were neglected and dependent. The trial court placed the children in the temporary custody of SCJFS following an emergency shelter care hearing. In addition, the trial court reaffirmed the pre-adjudicatory orders for Mother to complete a parenting evaluation, a drug and alcohol assessment, follow all recommendations, and submit to

---

[1] Jones has not filed an appeal in this matter.

urine screens. The trial court ordered all visitation between Mother and the children be supervised by SCJFS.

{¶4} At the adjudicatory hearing on May 16, 2012, Mother stipulated to a finding of dependency after SCJFS amended the complaint to remove the allegations of neglect. Mother also agreed to the trial court's awarding temporary custody of the children to SCJFS, and approval and adoption of the case plan. The trial court found SCJFS had made reasonable efforts to prevent the need for continued removal of the children from the home.

{¶5} Because service had not been perfected on Jones and Moore, the trial court continued the hearing relative to them until June 15, 2012. Neither father appeared at the June 15, 2012 hearing. The trial court heard testimony and found the children to be dependent. The trial court reaffirmed the dispositional orders issued May 16, 2012, as to the fathers. Moore subsequently filed a motion for transfer of venue to Trumbull County on July 9, 2012, which the trial court denied.

{¶6} Following a review hearing on October 16, 2012, the trial court continued the status quo. Moore filed a motion for custody of J.J. on March 7, 2013. The trial court conducted a review hearing on March 13, 2013, and continued the status quo. On March 15, 2013, SCJFS filed a motion for change of legal custody of J.J. to Moore, and a motion for change of legal custody of A.J. and M.J. to Michelle Willock, maternal great aunt. Mother filed a motion requesting an extension of temporary custody to allow her additional time to complete her case plan services on April 16, 2013. SCJFS filed a motion to show cause against Mother on April 24, 2013.

**{¶7}** The magistrate conducted a hearing on May 15, 2013. The following evidence was adduced at the hearing.

**{¶8}** SCJFS employee Zina Biehl testified she began working with the family on a non-court basis in February, 2012. The children were placed with relatives at that time. Mother agreed all contact with the children would be supervised. SCJFS filed the instant action in April, 2012, due to Mother's continued volatility during visits with the children and Mother removing the children from their respective placements without permission. Additionally, SCJFS had concerns about the family history of domestic violence, Mother's mental health, and Mother's drug use and abuse.

**{¶9}** Mother's case plan required her to undergo a parenting evaluation and follow all recommendations, which included a psychiatric consultation, and complete an assessment at Quest. Mother participated in mental health counseling at Trillium until March, 2013. Service providers and Mother's previous counselor advised Biehl Mother had attended her scheduled appointments, but had made no progress. Mother did not follow through with the recommended psychiatric consultation until December, 2012. Mother began group therapy at Quest in late June, 2012, however, in August, 2012, her case was closed as the result of her failure to attend. Mother was reassessed in October, 2012, and began individual counseling, but the therapist felt Quest could not provide her with services until Mother addressed her mental health issues.

**{¶10}** Biehl testified she believed it was in the best interest of the children to award legal custody of J.J. to Moore, and award legal custody of A.J. and M.J. to Willock because of the children's need for permanency and stability.

{¶11} Via Decision filed May 17, 2013, the magistrate awarded legal custody of J.J. to Moore, awarded legal custody of A.J. and M.J. to Willock, and ordered all visitation between Mother and children be supervised and at an SCJFS facility. The magistrate also found Mother guilty of contempt and sentenced her to 30 days in jail. The sentence was suspended on the condition Mother comply with all visitation orders.

{¶12} Mother filed timely objections to the magistrate's decision. The trial court heard oral arguments relative to the objections on August 5, 2013. Via Judgment Entry filed August 5, 2013, the trial court sustained Mother's objection as it related to the magistrate's finding of contempt, but overruled the remaining objections.

{¶13} It is from this judgment entry Mother appeals, assigning as error:

{¶14} "I. THE TRIAL COURT ERRED IN APPROVING AND ADOPTING THE MAGISTRATE'S DECISION AND ORDERS IN REGARDS TO FINDING THAT THE COURT DID NOT ABUSE ITS DESCRETION [SIC] BY ALLOWING THE CASE WORKER AND GUARDIAN AD LITEM TO TESTIFY ABOUT THE OUT OF COURT STATEMENTS OF THE CHILDREN.

{¶15} "II. THE TRIAL COURT ERRED IN APPROVING AND ADOPTING THE MAGISTRATE'S DECISION AND ORDERS IN REGARDS TO FINDING THAT MOTHER WAS ARRESTED FOR DRUG RELATED CHARGES IN DECEMBER OF 2012.

{¶16} "III. THE TRIAL COURT ERRED IN APPROVING AND ADOPTING THE MAGISTRATE'S DECISION AND ORDERS IN REGARDS TO FINDING THAT GRANTING MOTHER'S MOTION TO EXTEND TEMPORARY CUSTODY WAS IN THE BEST INTEREST OF THE CHILDREN.

{¶17} "VI [SIC]. THE TRIAL COURT ERRED IN APPROVING AND ADOPTING THE MAGISTRATE'S DECISION AND ORDERS IN REGARDS TO FINDING THAT REASONABLE EFFORTS WERE MADE TO RETURN THE CHILDREN TO THEIR HOME WITH MOTHER."

I

{¶18} In her first assignment of error, Mother contends the trial court erred in approving and adopting the magistrate's decisions and orders with regard to the finding there was no abuse of discretion in allowing the case worker and guardian ad litem to testify about out-of-court statements made by the children.

{¶19} During SCJFS's case-in-chief, counsel for SCJFS asked caseworker Zina Biehl, "Have the children acknowledged to you any knowledge of the volatility that you mentioned between [Mother and Jones]?" Transcript of May 15, 2013 Magistrate's Hearing at 19. . Biehl answered, "Mainly [A.J.]. She's the oldest, she acknowledges the struggle between her and her parents, she acknowledges * * *seeing lighter fluid thrown at her mother." *Id.* The trial court overruled Mother's objection to the question.

{¶20} Assuming, arguendo, the statement was inadmissible hearsay, we find any error in the admission of the statement was harmless. The erroneous admission of hearsay evidence is harmless if additional information, separate and apart from the erroneously admitted evidence, has been offered to prove that which the challenged evidence was offered to prove. *In re Reeves*, 9th Dist. Nos. 19650, 19669, 19672, 19673, 19674, 19705, 19706, 19707, 2000 WL 727532 (June 7, 2000).

{¶21} There was ample testimony throughout the hearing which established the volatility of the relationship between Mother and Jones as well as numerous incidents of domestic violence.  Mother acknowledged the charges of domestic violence against her.

{¶22} With regard to Mother's assignment of error as it relates to the guardian ad litem, we note there is no transcript of such in the record due to equipment failure.

{¶23} When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm. *Knapp v. Edwards Lab .,* 61 Ohio St.2d 197, 400 N.E.2d 384 (1980).  If a partial record does not conclusively support the trial court's decision, it is presumed that the omitted portion provides the necessary support. *Wozniak v. Wozniak,* 90 Ohio App.3d 400, 409, 629 N.E.2d at 506 (1993); *In re Adoption of Foster*, 22 Ohio App.3d 129, 131, 489 N.E.2d 1070, 1072-1073 (1985).

{¶24} Although Mother had notice of the equipment failure, she failed to provide this Court with an App. R. 9(C) statement.  App. R. 9(C)(1) provides:

> If no recording of the proceedings was made, if a transcript is unavailable, or if a recording was made but is no longer available for transcription, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee no later than twenty days prior to the time for transmission of the record pursuant to App. R. 10 and the appellee may serve on the appellant objections or propose amendments to the statement within ten days after service of the

appellant's statement; these time periods may be extended by the court of
appeals for good cause. The statement and any objections or proposed
amendments shall be forthwith submitted to the trial court for settlement
and approval. * * *

{¶25} Because Mother has failed to provide this Court with a 9(C) statement, we must presume the regularity of the proceedings below and affirm. It is the duty of the appellant to ensure the record, or whatever portions thereof are necessary for the determination of the appeal, are filed with the court in which he seeks review. *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 19, 520 N.E.2d 564. See also: *State v. Render* (1975), 43 Ohio St.2d 17, 330 N.E.2d 690; *State v. Bell* (1992), 78 Ohio App.3d 781, 605 N.E.2d 1335.

{¶26} Mother's first assignment of error is overruled.

II

{¶27} In her second assignment of error, Mother maintains the trial court erred in approving and adopting the magistrate's decision and orders with respect to the finding Mother was arrested on drug related charges in December, 2012.

{¶28} Mother's brief does not include an argument in support of this assignment of error.

{¶29} App.R. 16(A) provides, in relevant part:

The appellant shall include in its brief, under the headings and in the order indicated, all of the following:

* * *

(7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.

{¶30} Pursuant to App.R. 12(A)(2), we summarily overrule Mother's second assignment of error, which she fails to support with an argument in her brief.

{¶31} Mother's second assignment of error is overruled.

III

{¶32} In her third assignment of error, Mother asserts the trial court erred in approving and adopting the magistrate's decision with respect to the finding granting Mother's motion to extend temporary custody was not in the best interest of the children.

{¶33} A trial court's decision to grant or deny an extension of temporary custody is a discretionary one. See R.C. 2151.415(D)(1) and (2). Pursuant to R.C. 2151.415(D)(1), a trial court can extend temporary custody for six months only if it finds, by clear and convincing evidence, (1) that such an extension is in the best interests of the child, (2) that there has been significant progress on the case plan, and (3) that there is reasonable cause to believe that the child will be reunified with a parent or otherwise permanently placed within the period of extension. See *In re McNab,* 5th Dist. Nos.2007 AP 11 0074, 2007 AP 11 0075, 2008–Ohio–1638. *In re C.F.*, 5th Dist. No. 2013-CA-00182, 2013-Ohio-1415 at para. 37.

**{¶34}** The children's therapist, Suonna Cole, testified the children expressed disappointment and confusion about the length of the process. Cole also testified the children were doing great in their placements and they reported positive things to her. Biehl testified regarding Mother's minimal compliance with her case plan. Mother had been terminated from drug treatment. Further, Mother stopped counseling after the agency with which she dealt was merged with another, even though she was provided with the phone numbers for other agencies which could assist her. Mother acknowledged these failures as well. Mother refused to acknowledge the issue of domestic violence in her home was detrimental to the children. Mother provided no explanation as to how she would be ready for reunification if given a six month extension.

**{¶35}** Based upon the foregoing, we find the trial court did not abuse its discretion in denying Mother's request for an extension.

**{¶36}** Mother's third assignment of error is overruled.

IV

**{¶37}** In her final assignment of error, Mother submits the trial court erred in approving and adopting the magistrate's decision with respect to the finding SCJFS made reasonable efforts to return the children to her home.

**{¶38}** Pursuant to R.C. 2151.419, the agency that removed the child from the home must have made reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the home, or make it possible for the child to return home safely. The statute assigns the burden of proof to the agency to demonstrate it has made reasonable efforts. The statute provides in

determining whether reasonable efforts were made, the child's health and safety is paramount.

{¶39} Various sections of the Revised Code provide that an agency has a duty to make reasonable efforts to preserve or reunify the family unit. For example, R.C. 2151.412 requires the agency to prepare and maintain a case plan; R.C. 2151.414 requires an agency to make reasonable case planning and diligent efforts to assist parents to remedy the problems that caused removal of the child. *In Re C.F.,* 113 Ohio St.3d 73, 2007–Ohio–1104, 862 N.E.2d 816 at ¶ 29. However, the Revised Code does not expressly define what constitutes reasonable efforts. *Id.*

{¶40} This Court has found where the evidence establishes that the agency provided services designed to alleviate the problem that led to the child's removal, made diligent efforts to assist the parents in remedying the problem, and attempted to transition the child back into the family home, the agency has proven reasonable efforts. *In re K.R.,* Stark App. No.2009 CA 00061, 2009–Ohio–4350.

{¶41} SCJFS began working with the family on a non-court basis in February, 2012. The children were voluntarily placed with a relative and a safety plan was implemented. Due to continued concerns, SCJFS requested court involvement. Thereafter, a case plan was implemented. However, Mother only minimally complied with the services and recommendations. Mother refused to acknowledge her need for, and failed to take advantage of, the services and treatment offered.

{¶42} Based upon the foregoing, we find SCJFS made reasonable efforts to reunite the family.

{¶43} Mother's fourth assignment of error is overruled.

{¶44} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.

By: Hoffman, P.J.

Delaney, J.  and

Baldwin, J. concur