COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: J.R. | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Andrew J. King, J. |
| | : | |
| | : | Case No. 23CA000010 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Knox County Court of Common Pleas, Juvenile Division, Case No. 221-2028

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      December 26, 2023

APPEARANCES:

For Appellant Mother:

NOEL B. ALDEN
ZELKOWITZ, BARRY et al.
103 South Main St.
Mount Vernon, OH 43050

For Allen Hamilton:

CAROLYN FITTRO
1335 Dublin Rd., Suite 115F
Columbus, OH 43215

For Appellee Knox Co. DJFS:

ASHLEY L. JOHNS
117 E. High St.
Mount Vernon, OH 43050

Guardian Ad Litem:
ADAM JOHNSON
25 E. Waterloo St.
Canal Winchester, OH 43110

Marea Guillermo
240 Newark Rd.
Mount Vernon, OH 43050

*Delaney, J.*

{¶1} Appellant Mother appeals from the June 2, 2023 Judgment Entry of the Knox County Court of Common Pleas, Juvenile Division granting legal custody of her minor child J.R. ["John Doe"] to Paternal Aunt M.G. Appellee is the Knox County Department of Job and Family Services ["Agency"].

## FACTS AND PROCEDURAL HISTORY

*History of Agency involvement with John Doe*

{¶2} The Agency initiated action regarding John Doe, the subject of this case, twice. First, the trial court granted emergency custody of John Doe to the Agency nine days after his birth in 2020. He remained in the Agency's custody from February 11, 2020, until August 20, 2020, when he was reunified with Mother. The Agency maintained protective supervision of John Doe until November 10, 2020.

{¶3} The instant case arose on April 2, 2021, when the Agency again sought and was awarded temporary custody of John Doe. A shelter care hearing was held on April 5, 2021, and the trial court found probable cause to continue the child in the Agency's temporary custody. On April 5, 2021, the Agency filed a complaint alleging dependency. A preliminary hearing was held on April 16, 2021, and temporary custody was continued to the Agency. On May 3, 2021, the trial court found the child dependent following an adjudicatory hearing. On June 3, 2021, following a dispositional hearing, the child was continued in the temporary custody of the Agency, and temporary custody continued following a review hearing on September 27, 2021.

{¶4} On January 17, 2023, the Agency filed a motion to modify disposition requesting the trial court to grant legal custody of John Doe to Paternal Aunt.

{¶5}   On March 30, 2023, Mother filed a motion to return custody.

{¶6} On February 28, 2022, the Agency filed a motion for permanent custody because the child had been in the Agency's temporary custody in excess of 12 of the past 22 consecutive months.

{¶7} On February 10, 2022, the biological Father of the child was identified and verified by DNA testing. Ultimately the motion for permanent custody was dismissed by the Agency during efforts to explore placement with paternal relatives.

{¶8} On January 17, 2023, the Agency filed a motion to modify disposition requesting the trial court grant legal custody of John Doe to Paternal Aunt.

{¶9}   On March 30, 2023, Mother filed a motion to return custody.

{¶10} On April 3, 2023, and April 24, 2023, the trial court held an evidentiary hearing on all pending motions.

*Evidentiary hearing on pending motions*

{¶11} The following evidence is adduced from the record of the hearing.

{¶12} The family's ongoing caseworker testified that John Doe has been the subject of action by the Agency twice. He was first removed from Mother's care in February 2020, shortly after his birth, until August 2020. He was reunified with Mother and the Agency retained protective supervision from August 2020 until November 2020.

{¶13} The instant case arose on April 2, 2021, when the Agency was granted emergency temporary custody of Doe. Law enforcement took custody of the child after placing Mother on a 72-hour mental-health hold and observing the home conditions to be

unsafe.[1]  Doe was found to be dependent and remained in the temporary custody of the Agency throughout the duration of the case (25 months).

{¶14} Although this case began with concerns for Mother's mental health, additional problems emerged including substance abuse and homelessness. The Agency developed a case plan with identified goals including investigation of Father and  paternal relatives,  visitation,  referral  to  providers,  foster  placement,  and  kinship  placement.

{¶15} Mother demonstrated ongoing instability during implementation of the case plan. She tested positive for use of methamphetamines through September 2021; was homeless through December 2021; failed to appear for random drug screens through December 2022; and did not receive mental health treatment for the specific diagnoses identified in her psychological evaluation, to wit, bipolar 2 and borderline personality disorder.

{¶16} Mother did receive mental health treatment at the Freedom Center from October 2021 until February 2022. At the beginning of treatment, her provider opined Mother was so mentally ill that she could not recognize her own mental illness.  She was evaluated again in March 2023 but did not receive additional treatment. The provider agreed that Mother's instability could pose a risk to a 3-year-old child, especially if Mother was attempting to parent the child unsupervised or full-time.

{¶17} The Agency referred Mother for a psychological evaluation with Dr. Dennis Marikis in March 2022. Dr. Marikis diagnosed Mother with bipolar disorder 2 and borderline personality disorder.  Dr. Marikis opined that Mother's significant psychiatric

---

[1] The caseworker testified that law enforcement "pink slipped" Mother.  T. 18.

problems impacted her ability to parent to the degree that placing a young child with Mother would be inappropriate.

{¶18} Mother attended counseling at Catalyst from February 2022 until December 2022 and Family Life Counseling from December 2022 until May 2023. Providers from both services testified that Mother was treated for anxiety-related disorders, not for her psychological diagnoses, but Mother did make progress and her attendance was positive.

{¶19} The Agency eventually sought permanent custody of John Doe on February 8, 2022; that motion was dismissed, refiled, and dismissed again when Father was identified and confirmed for the first time. The Agency investigated the possibility of placement with Father, but he was inappropriate due to concerns with alcohol abuse and domestic violence against a minor victim. The Agency investigated paternal relatives and identified Paternal Aunt as a potential placement.

{¶20} Paternal Aunt testified at the hearing and noted she signed a legal statement of understanding with the Agency agreeing to assume custody of John Doe. She understands that both parents retain rights to reasonable visitation, obligations to support Doe, the right to determine his religious upbringing, and must consent to his adoption. Paternal Aunt lives in Knox County with her other children and John Doe, who was first placed with her in November 2022. By April 2023, Doe's development was positive and ongoing; his speech improved, he was potty-trained and wore diapers only at bedtime, and ate a variety of foods. He was in preschool full-time and bonded with the other children in the home.

{¶21} Paternal Aunt has the means and the desire to care for Doe long-term and the ability and willingness to work out visitation with both parents, which she has done

successfully so far. She is also willing to terminate visitation if appropriate, as she did once when Father arrived for visitation visibly intoxicated.

{¶22} The Agency recommended legal custody to Paternal Aunt due to Mother's lack of stability, cyclical mental health concerns affecting her ability to parent, and John Doe's need for a safe, secure placement. Mother has significant history with the Agency not only with John Doe but also with her three other children, all of whom are in relative placement. At the time of the legal custody hearing, John Doe had been placed out of Mother's home for the majority of his young life, 30 months out of 38, and had just started unsupervised visitation after 25 months of case plan services.

{¶23} Although Mother made progress on her case plan and was doing well at the time of the hearing, the caseworker testified historically Mother cannot maintain stability for any length of time when she is reunified with children. The caseworker acknowledged Mother has completed parenting programs and is enrolled in counseling programs, has adequate housing and employment, and is appropriate with John Doe during visitation. When asked what prevents the Agency from reunifying Mother with Doe, the caseworker pointed to Mother's significant history with the Agency and the results of the psychological evaluation. T. 26.

{¶24} The guardian ad litem testified at the hearing and recommended that the trial court grant legal custody to Paternal Aunt. He noted this is an unusually complicated case because he has recently had very positive interactions with Mother, but also negative interactions in which she expressed that homelessness is acceptable for a child. He observed that Mother has been appropriate with John Doe in the recent short term, but opined that parenting John Doe full-time would put too much pressure on Mother's

fragile mental health. The G.A.L. stressed that his priority is long-term safety and security for John Doe; he is concerned with Mother's overall stability because historically reunifications have not ended well. The G.A.L. also pointed out that legal custody does not terminate Mother's rights; if her progress continues, she can ask the court for more contact, but at this point in time John Doe has been in the Agency's custody for two years and deserves permanency.

{¶25} On June 2, 2023, the trial court filed a journal entry finding that a grant of legal custody to Paternal Aunt was in John Doe's best interest. Mother now appeals from the trial court's Judgment Entry of June 2, 2023.

{¶26} Mother raises one assignment of error:

## ASSIGNMENT OF ERROR

{¶27} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT IT WOULD BE IN THE BEST INTERESTS OF J.R. TO GRANT LEGAL CUSTODY OF HIM TO [PATERNAL AUNT]."

## ANALYSIS

{¶28} In her sole assignment of error, Mother argues the trial court abused its discretion in awarding legal custody of John Doe to Paternal Aunt. We disagree.

{¶29} R.C. 2151.353(A) states in pertinent part: "If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition: * * * Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the

dispositional hearing by any party to the proceedings * * *. In the instant case, John Doe was adjudicated a dependent child.

{¶30} We note legal custody does not divest parents of residual parental rights, privileges, and responsibilities. *In re S.D.,* 5th Dist. Stark No. 2013CA0081, 2013-Ohio-5752, ¶ 29, citing *In re C.R.,* 108 Ohio St.3d 369, 2006–Ohio–1191, 843 N.E.2d 1188 at ¶ 17. Accordingly, Mother may petition the trial court in the future for a modification of custody. *Id.*

{¶31} Unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is a preponderance of the evidence. *In re C.Y.*, 5th Dist. Licking No. 14-CA-7, 2014-Ohio-4142, ¶ 25, citing *In re A.C.,* 12th Dist. Butler No. CA2006–12–105, 2007-Ohio-3350; *In re Nice,* 141 Ohio App.3d 445, 751 N.E.2d 552 (7th Dist.2001). The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, and a trial court must base its decision on the best interest of the child. *In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188; *In re P.S.,* 5th Dist. Stark No. 2012CA00007, 2012-Ohio-3431. Despite the differences between a disposition of permanent custody and legal custody, some Ohio courts have recognized that "the statutory best interest test designed for the permanent custody situation may provide some 'guidance' for trial courts making legal custody decisions." *In re A.F.,* 9th Dist. Summit No. 24317, 2009-Ohio-333, citing *In re T.A.,* 9th Dist. Summit No. 22954, 2006-Ohio-4468.

{¶32} R.C. 2151.414(D) sets forth factors to be considered in deciding regarding the best interest of the child. These factors include, but are not limited to, the following:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, and out-of-home providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

(4) The child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶33} Because custody determinations "'are some of the most difficult and agonizing decisions a trial judge must make,'" a trial judge must have broad discretion in considering all of the evidence. *In re K.H.,* 5th Dist. Muskingum No. CT2016–0001, 2016–Ohio–4784, ¶ 9, quoting *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). We therefore review a trial court's determination of legal custody for an abuse of discretion. *Miller v. Miller,* 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). An abuse of

discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶34} We review the following with the standards for legal custody in mind and find the record to be replete with relevant, competent, and credible evidence supporting the trial court's conclusion that granting legal custody to Paternal Aunt is in John Doe's best interest.

{¶35} We do not discount the progress Mother has made on her case plan, and she is clearly trying her best to maintain stability and sobriety. Nevertheless, her history with the Agency, her cyclical mental health concerns, and above all her seeming unwillingness to address the significant psychological diagnoses weigh in favor of granting legal custody to Paternal Aunt. Mother is addressing her anxiety and has been sober recently, but the diagnoses of bipolar and borderline personality disorder, along with her past methamphetamine use, are significant issues for the G.A.L., Dr. Marikis, the trial court, and for us. Dr. Marikis opined that Mother's significant psychiatric problems affected her ability to parent to the degree that placement of a young child with her would be inappropriate.

{¶36} Moreover, at the time of the hearing John Doe had been out of Mother's home for 30 months out of 38 months of life. He was thriving with Paternal Aunt. Upon our review of the record, we find by a preponderance of the evidence that the grant of legal custody to Paternal Aunt is in John Doe's best interest.

{¶37} We disagree with Mother's characterization that the trial court "pre-judged" the case before evidence was taken at the hearing. Upon thoroughly reviewing the record, we find that there was competent, credible evidence supporting the trial court's

decision to decline return of John Doe to Mother's custody and that decision is in the best interest of the child. In light of the trial court's broad discretion in custody determinations, we cannot say that the trial court abused its discretion in granting legal custody of John Doe to Paternal Aunt. See, *Matter of D.H.*, 5th Dist. Muskingum No. CT2020-0040, 2021-Ohio-192, ¶ 41.

{¶38} Mother's sole assignment of error is overruled.

## CONCLUSION

{¶39} Mother's sole assignment of error is overruled and the judgment of the Knox County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, J.,

Gwin, P.J. and

King, J., concur.